November 13.
JUDGE COALTER
delivered his opinion, in which the other Judges concurred.*
The jurisdiction of a Court of Chancery, I think, can be maintained in this case, if on no other ground, on the one taken in the argument, that if the Plaintiff in Equity had sued at Law, he could have been successfully resisted by the mortgage, which was duly recorded. Even if the Bill of Sale had been produced there, it might not have been a clear case at Law, that it was a release of the mortgage, so as, in that Court, to divest the legal title, and leave the Defendant simply on his title under the Bill of Sale. This, however, *620 •would be the consequence in a- Court of Chancery, where substance is looked to, as decided in the case of Clayborne v. Hill, 1 Wash. 177. There it was decided, that the mortgage, being recorded, was not fraudulent and void by reason that the possession remained with the mortgagor; but that the subsequent absolute Bill of Sale operated as a release of the mortgage, and became the title under which the bar-gainee held; and that a continued possession in the bargainor afterwards, rendered that-conveyance void. But the Defendant could have kept that Bill of Sale in his pocket, so that a resort must have been had to a Court of Equity to extract it; and if, for this purpose, the Appellee had a right to come into Equity, I can see no reason why he should not claim relief also th'ere; so as *to have possession restored, and an account of hires and profits. Besides, he had a right to go into Equity, in order to enquire into the compromise between the Appellant and Singleton the bargainor, and the compensation received under that agreement. Had the-slave not been taken from the possession, of the Ap-pellee in the manner he was, the Appellant must have sued at -Daw; and had he recovered there under his mortgage, the Ap-pellee surely could have enquired into these matters, in a Court of Equity. The manner of that possession, admitting that it was not a stealing, (as it has been denominated at the bar) and was not absolutely illegal, provided the party could have shown a better title, is nevertheless such a procedure, as does not deserve the countenance of Courts of Justice, and cannot be insisted on, in Equity, as placing the party on higher .ground than he would have occupied, had it not taken place.
As to the merits, it seems to me, that on both points, they are equally clear for the appellee. Twyne’s Case, 3 Co. 80, where it was held that absolute conveyances of goods, not accompanied by possession, are fraudulent and void, “for that the -donor continueth in possession, and useth them as his own, and by reason thereof he tradeth and trafficketh with others, and defrauds and deceives them,” followed up by the cases of Edwards v. Harbin; Hamilton v. Russel, and by the case of Clayborne v. Hill, above noticed; Fitzhugh v. Anderson, 2 Hen. & Munf. 289, and Alexander v. Deneale, 2 Munf. 341, and other cases in this Court, clearly show, that the Bill of Sale to the Appellant was fraudulent and void as to the Appellee, at the time he made his purchase.
But, it is argued, that the Appellee cannot avail himself of this, because he also permitted the property to remain with the seller. and that his purchase therefore was void.
In the first place, it does not. appear to me, that this is proved. Delivery at the moment of the sale, is not necessary. The possession must remain, and if it did so, it *was a matter very susceptible of proof. The Appellee was found in possession by the Appellant, and although it does not appear when that possession was acquired, yet, as this Court will not presume a fraud, there ought to have been proof of it by him, who seeks to avail himself of such fraud.
-But, if it were otherwise, and if we must take it that it did so remain, still if he got possession before • any one was deceived, and became a purchaser thereof, it is not void. I speak of subsequent purchasers, •not of creditors. The Appellant is not such a purchaser; and X cannot perceive how this prior purchase, which was void as aforesaid at-the time the Appellee purchased and paid his money, can - be reinstated, so as to place him in the condition of a subsequent purchaser.
This seems, indeed, not to be contended for to this extent; but, it is said, that there is par delictum, and that there is equal Equity, and the Appellant, not only being prior in time, but being Defendant in Equity, must prevail. But, it 'seems to me, that this is not so as to either point. It is true, if there had been a subsequent purchaser to both, neither could have prevailed against him, if possession remained, as has been alleged. He would have advanced his money, and must have held the property; but, the Appellant was not so deceived, did not so advance his money. The Appellee, however, was so deceived by the conduct of the Appellant, and so there is no par delictum, and the Equity is not equal.
A.s to the compromise and compensation received by the Appellant from Singleton, it is clearly proved by many witnesses, and it is admitted, that it would have put this case to rest, had it not been entered into, as is alleged, in consequence of a false suggestion by the Appellee, that the slave was not in his possession when demanded. This suggestion, true or false, could only have operated on the Appellant, so as to prevent his summary mode of redress, after-wards resorted to. It could no more have prevented a suit against the Appel-lee,' or caused the appellant *to resort for satisfaction to Singleton, than if he had simply refused to deliver him. But, how was the fact? The Appellant admits in his answer, that he did not believe' this statement; and he also admits, that before he made the compromise, he had taken the advice of Pindal, as to this summary redress. But he wished, probably, to avoid the scandal of-such a transaction, and preferred trying to obtain satisfaction from Singleton. This he did, and procured an order for $440, bearing interest, the price which the Appellee gave for the slave. The price of the three negroes sold to this Appellant, being about $1,100, and the two he received, being about twenty years of age, and one about eighteen, whilst the one in dispute was about twelve, it is fair to presume that he considered he obtained more than he gave for him. Nor is it at all unlikely that he should so have expressed himself, when speaking of the transaction. The witnesses, who testify to this, are in no otherwise discredited,- and ought not be disbelieved from the mere improbability of such a conversation, especially as many others prove his declarations, that he had made the compromise and was satisfied.
On every ground, therefore, the Decree must be affirmed. •

The President, and Judge Greek, absent.